UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:23-cr-00176 |
| | ) | |
| v. | ) | **UNITED STATES'S SENTENCING MEMORANDUM** |
| | ) | |
| **(3) KEVIN JA'CORYEN JAMES FIELDS** | ) ) | |

COMES NOW the United States of America, by and through Dena J. King, United States Attorney for the Western District of North Carolina, and respectfully requests that the Court sentence Defendant Kevin Ja'Coryen James Fields to a sentence of imprisonment within the advisory guideline range for his role in a multi-million dollar auto theft ring and order restitution in an amount to be determined at sentencing. Such a sentence would be sufficient, but not greater than necessary, to fulfill the goals of sentencing given the nature of Defendant's crimes, their significant impact on his victims, and his substantial criminal history.

## DEFENDANT'S CRIMES

From 2021 through 2023, FIELDS and his coconspirators engaged in a scheme and conspiracy to steal high-end motor vehicles from car dealerships at various locations across the United States and transport them across state lines and to otherwise possess and sell the stolen motor vehicles that had been transported across state lines. During the conspiracy, the defendant and his coconspirators stole dozens of vehicles worth millions of dollars, many of which were transported to the greater Charlotte, North Carolina region.

1

It was part of the conspiracy that FIELDS and his coconspirators stole motor vehicles from car dealerships located throughout the United States, including: North Carolina, South Carolina, Georgia, Florida, Tennessee, Kentucky, Alabama, Mississippi, Louisiana, Indiana, Ohio, Pennsylvania, New Jersey, New York, and Arizona. In order to maximize their profits from the thefts, FIELDS and his coconspirators stole high-end vehicles from the victim car dealerships, including various luxury models made by Bentley, BMW, Cadillac, Infiniti, Land Rover, Mercedes-Benz, and Porsche, as well as trucks and other expensive models from Chevrolet, Dodge, Ford, GMC, and Jeep.

The scope of this conspiracy was significant. FIELDS personally participated in, knew about, or reasonably foresaw the thefts of approximately 54 vehicles worth more than $3.8 million.[1] FIELDS participated in stealing cars at more than a dozen dealerships. FIELDS's role in the conspiracy was generally that of a driver. He frequently drove stolen vehicles from the site of the theft back to Charlotte. On other occasions, he served as a driver of one of the clean vehicles used to transport other coconspirators to and from the site of the theft.

Although it appears that FIELDS ceased participating in the charged conspiracy after he reported to the NC Department of Corrections in March 2022 in connection with various offenses, upon his release from prison in early 2023, he quickly began attempting to steal cars again. He was arrested in a stolen car on July 4, 2023, in York County, South

---

[1] These figures represent only confirmed thefts.

Carolina and again on August 13, 2023, in Iredell County for breaking into various motor vehicles.

## PROCEDURAL HISTORY

On August 15, 2023, FIELDS was indicted before a federal grand jury in Charlotte, North Carolina, in a sixteen-count indictment, along with four coconspirators. On July 11, 2024, Defendant became the fourth member of the conspiracy to plead guilty, pleading to two counts in the Bill of Indictment: Conspiracy to Commit an Offense Against the United States, in violation of 18 U.S.C. § 371 (Count 1) and Possession of a Stolen Motor Vehicle, in violation of 18 U.S.C. § 2313 (Count 11).

After Defendant pleaded guilty, the Probation Office prepared a Final Presentence Report (PSR). *See* Doc. 128. It correctly calculated Defendant's Total Offense Level as 25 and his Criminal History Category as a VI, which resulted in a guideline imprisonment range of 110 to 136 months. *Id.* at ¶ 84. There are no known outstanding objections to the PSR.

## SECTION 3553(a) ANALYSIS

In determining the appropriate sentence, "a district court must begin by correctly calculating the applicable Guidelines range." *United States v. Evans*, 526 F.3d 155, 160 (4th Cir. 2008). The advisory Guidelines are "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines "seek to embody the § 3553(a) considerations, both in principle and in practice. . . . [I]t is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007). "[A]

3

Guidelines sentence will usually be reasonable, because it reflects both the Commission's and the sentencing court's judgment as to what is an appropriate sentence for a given offender." *Id.* at 351. Ultimately, however, the appropriate sentence is for the District Court to determine based on the factors enumerated in 18 U.S.C. § 3553(a), and "any sentence, within or outside of the Guidelines range, as a result of a departure or of a variance, must be reviewed by appellate courts for reasonableness pursuant to an abuse of discretion standard." *United States v. Diosdado-Star*, 630 F.3d 359, 365 (4th Cir. 2011).

I.   **The Section 3553(a) Factors Dictate a Guidelines Sentence.**

The 18 U.S.C. § 3553(a) factors dictate a sentence of imprisonment within the calculated Guidelines range for Defendant. While the post-*Booker* sentencing regime affords the sentencing court discretion in selecting the appropriate sentence, "[a]s a matter of administration and to secure nationwide consistency, the advisory Guidelines should be the starting point and the initial benchmark" in determining the appropriate sentence. *Gall*, 522 U.S. at 49. The Fourth Circuit has stated it even more strongly, describing the Guideline offense level as "the *crucial* 'starting point,' as well as the 'initial benchmark'" in the sentencing process. *United States v. Lewis*, 606 F.3d 193, 199 (4th Cir. 2010) (quoting *Gall*, 522 U.S. at 49) (emphasis added). As explained below, a sentence within the Guideline range is appropriate to punish Defendant for his role in a long-running conspiracy, to protect the public, promote respect for the law, and to deter him and others from committing similar acts in the future.

4

### A. Nature and Circumstances of the Offense and Need to Provide Just Punishment

Defendant's offense was egregious. It was not a one-off lapse of judgment, but rather a prolonged and deliberate pattern of criminal behavior. FIELDS participated in stealing vehicles on more than a dozen occasions throughout the country, and he participated in, knew about, or reasonably foresaw the thefts of approximately 54 vehicles worth more than $3.8 million. The scheme required significant planning and methods of deception beyond what is found in run-of-the-mill vehicle thefts, and it caused hardships for dozens of business owners, many of whom lost multiple vehicles at a time.

### B. Defendant's History and Characteristics, the Need to Provide Specific Deterrence, and the Need to Protect the Public

Defendant's criminal history is terrible. He has been committing crimes for more than a decade, since he was only sixteen years old. Doc. 128 at ¶ 40. His criminal history is littered with convictions and arrests for stolen vehicle offenses, larcenies, drug crimes, and firearm offenses. He also has committed several probation violations, and he participated in the charged conspiracy while under a criminal justice sentence for felony possession of a firearm by a felon and larceny. Doc. 128 at ¶ 55. There has been no meaningful gap in FIELDS' criminal history other than periods where he was incarcerated.

FIELDS's substantial criminal history dictates a serious sentence in this case in order to protect the public and to deter him from committing future crimes when he is

released. A significant prison sentence will force Defendant to truly grapple with whether additional crimes are worth the risk.

        C. *The Need to Provide General Deterrence and the Need to Promote Respect for the Law*

A significant prison sentence is necessary to promote respect for the law and to deter others who might view stealing cars as a low-risk crime. As evidenced by the criminal histories of FIELDS and several of his coconspirators, many defendants involved in stealing cars who are charged at the state level for individual thefts receive little, if any, prison time. Proving that any particular car theft is associated with a larger conspiracy, as was done here, is difficult and time intensive.

Where offenses are lucrative and difficult to detect and punish, general deterrence is key. *See United States v. Morgan*, 635 F. Appx. 423, 450 (10th Cir. 2015) ("Deterrence is a crucial factor in sentencing decisions for economic and public corruption crimes…"); *United States v. Hayes*, 762 F.3d 1300, 1308 (11th Cir. 2014) ("In a number of opinions … we have explained that general deterrence is an important factor in white-collar cases, where the motivation is greed."). The Fourth Circuit has explicitly recognized the importance of incarceration for defendants convicted of white collar crimes such as tax evasion, theft, fraud and embezzlement. *See United States v. Engle*, 592 F3.d 495, 501 (4th Cir. 2010).

In addition, a serious sentence is necessary here to promote respect for the law. A lenient sentence in a large case like this, which involves millions of dollars of loss and dozens of victims, would undermine the public's confidence in the justice system.

6

Thus, a significant sentence is necessary to provide general deterrence from the lure and spoils of luxury vehicle heist schemes, which many potential defendants in this community have traditionally viewed as a low-risk offense for which they will likely get probation. A significant sentence would send the deterrence message courts in this District have repeatedly recognized as imperative in economic crimes.

## CONCLUSION

For the forgoing reasons, the United States requests that this Court sentence Defendant to a term of imprisonment within the advisory guideline range and order restitution in an amount to be determined at sentencing.

RESPECTFULLY SUBMITTED this 9th day of January, 2025.

DENA J. KING
UNITED STATES ATTORNEY

**s/ Daniel Ryan**

Daniel Ryan
Assistant United States Attorney
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
(704) 344-6222 (office)
daniel.ryan@usdoj.gov

**s/ William T. Bozin**

William T. Bozin
Assistant United States Attorney
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
(704) 816-1625 (office)
william.bozin@usdoj.gov

## ARTIFICIAL INTELLIGENCE CERTIFICATION

Pursuant to the Court's June 18, 2024, Standing Order, which was published to the Bar of the Western District of North Carolina on June 27, 2024, the undersigned hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard online legal research sources Westlaw, Lexis, Fast Case, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 9th day of January, 2025.

/s/ Daniel Ryan
*Assistant United States Attorney*